J-S30030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: W.A., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.P., FATHER | : | No. 67 WDA 2018 |

Appeal from the Decree December 8, 2017
In the Court of Common Pleas of Allegheny County
Orphans' Court at No:  CP-02-AP-0000186-2016

BEFORE:   BENDER, P.J.E., STABILE, J., and STRASSBURGER*, J.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 11, 2018**

J.P. ("Father") appeals from the decree entered December 8, 2017, in the Court of Common Pleas of Allegheny County, which terminated involuntarily his parental rights to his minor son, W.A. ("Child"), born in December 2006.[1]  After careful review, we affirm.

The Allegheny County Office of Children, Youth and Families ("CYF") has a lengthy history of involvement with this family dating back to September 2011.  N.T., 12/8/17, at 57.  CYF received its most recent referral on November 28, 2014, which alleged housing issues, medical neglect, and poor parenting skills on the part of Mother.  *Id.* at 60-61.  CYF conducted an

_____

* Retired Senior Judge assigned to the Superior Court.

[1] The trial court also terminated the parental rights of W.A.'s mother, L.A. ("Mother").  Mother appealed the termination of her parental rights at Superior Court docket number 48 WDA 2018.  We address her appeal in a separate memorandum.

investigation, which revealed that Mother was intellectually limited and appeared to be hoarding food. *Id.* at 61. In addition, Child's younger half-brother, J.A.A., had been hospitalized several times for reactive airway disease, and Mother was failing to administer his medication properly. *Id.* at 61, 112. CYF referred Mother for in-home services. *Id.* at 62.

CYF obtained an emergency custody authorization for Child on June 26, 2015, after an incident during which J.A.A. "fell down and cut his lip open and chipped his tooth." *Id.* at 63. CYF directed Mother to take J.A.A. to the hospital, but she failed to do so. *Id.* CYF was also concerned that Mother's home was cluttered and dirty, and that she was failing to provide adequate supervision for Child and ensure his safety. *Id.* at 63-64.

Meanwhile, CYF made contact with Father. *Id.* at 65. Father was living separately from Mother with Child's paternal grandmother. *Id.* However, CYF concluded that Father would not be an appropriate caregiver. *Id.* Father's home had several safety issues, and a CYF parenting assessment revealed "that he would not be able to parent unless he had somebody within earshot of him." *Id.* Child was adjudicated dependent on August 15, 2015. *Id.* at 66.

On October 20, 2016, CYF filed a petition to terminate Father's parental rights to Child involuntarily. The trial court conducted a hearing on December

8, 2017, after which it entered a decree terminating Father's parental rights.[2]

Father timely filed a notice of appeal on January 5, 2018, along with a concise statement of errors complained of on appeal.

Father now raises the following question for our review: "Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of [Father's] parental rights would best serve the needs and welfare of the Child pursuant to 23 Pa.C.S.[A.] §[]2511(b)?" Father's Brief at 4.

We review Father's issue mindful of our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

---

[2] In a single sentence at the conclusion of his brief, Father alleges that the trial court erred by failing to appoint legal counsel for Child. To the contrary, Child had legal counsel during the termination hearing, and his counsel continues to represent him on appeal.

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Father's parental rights pursuant to Section 2511(a)(2), (5), (8), and (b), which provides as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
> >
> > ***
> >
> > (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the

- 4 -

conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*\*\*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).

In his brief on appeal, Father concedes that CYF presented clear and convincing evidence that his parental rights should be terminated pursuant to Section 2511(a). Father's Brief at 9 ("CYF, the petitioner, did clearly and convincingly establish threshold grounds for termination pursuant to

23 Pa.C.S.[A.] §[]2511(a)(2).").  Moreover, Father failed to include Section 2511(a) in his concise statement and in his statement of questions involved. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa. Super. 2017) (holding that the appellant waived Section 2511(a) by failing to develop it in her brief, and that she waived Section 2511(b) by failing to include it in her concise statements and statement of questions involved).  Therefore, we need only consider whether the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(b).[3]  The requisite analysis is as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child.  As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act.  Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis.  While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.  Additionally, this Court stated

---

[3] We remind the trial court that Section 2511(a)(5) and (8) does not provide an appropriate basis to terminate Father's parental rights, because Child was not removed from Father's care as the statute requires.  *See In re C.S.*, 761 A.2d 1197, 1200 (Pa. Super. 2000) (*en banc*) ("Termination under subsection 2511(a)(5) was not appropriate here because the record reflects that C.S. was never in Appellant's care and, therefore, could not have been removed from his care.").

that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and citations omitted)).

Here, Father argues that the trial court abused its discretion by concluding that termination of his parental rights would best serve Child's needs and welfare. Father's Brief at 7-14. Father alleges that the court conducted an improper Section 2511(b) analysis, by focusing on his failings as a parent, and on the quality of Child's foster parents, rather than the effect that terminating his parental rights would have on Child. *Id.* at 7, 12-14.

In its opinion, the trial court found there is no possibility that Father will ever be able to care for Child, due to his significant intellectual limitations and inability to live independently, among other things. Trial Court Opinion, 2/6/18, at 10-11. The court further found that Child has "a 'relationship' of sorts with . . . Father," but that this relationship is not so substantial that severing it would subject Child to a negative psychological impact. *Id.* at 11. The court reasoned that Child has been in care for more than two and a half years, and that Father has had only sporadic contact with him during that time. *Id.* at 9. In addition, Child is benefiting from the care of his pre-adoptive foster parents, who can provide him with the loving and stable environment he needs. *Id.* at 11-12.

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion. During the termination hearing, CYF presented the testimony of psychologist, Neil Rosenblum, Ph.D. Dr. Rosenblum testified that he conducted a series of psychological evaluations involving Father, Child, and Child's foster parents between August 2016 and November 2017. N.T., 12/8/17, at 8-9, 18, 21, 23. Based on these evaluations, Dr. Rosenblum opined that Father lacks the capacity to parent Child. *Id.* at 24. He emphasized Father's "very definite limitations in his own personal functioning and continued dependency on other people to provide him with support and help in taking care of himself." *Id.* Father exhibits a long-standing history of intellectual limitations. *Id.* at 23. Moreover, Father has no employment history and he has never been able to live independently. *Id.* at 24.

Concerning Child's relationship with Father, Dr. Rosenblum testified that Child has a "familiarity" with Father, "more like a peer-to-peer relationship," but not a parent/child bond. *Id.* at 23. He continued, "[I]t's a peripheral relationship. In my opinion, [Child] can take it or leave it. It's not been something that's consistent in his life." *Id.* Dr. Rosenblum did not believe that severing Child's relationship with Father would cause him severe trauma. *Id.* at 25-27. He described Father's interactions with Child as follows:

> . . . . I mean, [Child] knows his dad. They seem to have some physical similarities and things in common with one another in terms of their looks and appearance.

Father was also, you know, someone who was pretty flat, lacking in enthusiasm, very passive in his interaction with [Child].

When guided into certain activities by me during the session, he was able to follow through and play some games with [Child], but he seemed to know very little about his school, about his special education needs, about his therapy.

I got the impression that [F]ather comes and spends time with [Child], but, again, had very limited -- had definite limitations in his parenting capacity and his ability to really understand or respond effectively to [Child] and his developmental issues.

*Id.* at 21-22.[4]

Dr. Rosenblum also praised Child's foster parents. *Id.* at 10-11, 18-20, 25. He testified that the foster parents "are very observant, very responsible and very attentive to [Child's] needs. . . . [T]here's no question that his current foster home placement has been extremely beneficial to [Child] and has helped him to improve his ability to function and respond to different portions of the environment more effectively." *Id.* at 10-11. Dr. Rosenblum recommended that adoption by the foster parents would be consistent with Child's needs and welfare. *Id.* at 25.

Thus, the record supports the trial court's findings pursuant to Section 2511(b). Father's intellectual limitations and inability to live independently render him incapable of parenting Child. Moreover, while Child has a relationship with Father, this relationship is merely peripheral and is not a

_____

[4] The record indicates that Father missed many of his visits with Child. CYF caseworker, Vickie Naccarato, testified that Father attended only twenty-six out of fifty-three scheduled visits. N.T., 12/8/17, at 101.

necessary and beneficial parent/child bond. Child is now in a pre-adoptive foster home, which has been extremely beneficial for him. Child's foster parents are supportive of his needs, and can provide him a safe and stable environment.

While Father contends that the trial court should not have focused on his parental incapacity and the quality of Child's foster parents when conducting its Section 2511(b) analysis, this argument is specious. As we stated above, Child's relationship with Father was only one of many factors for the court to consider. *C.D.R.*, 111 A.3d at 1219. The court was free to consider any other factors relevant to Child's needs and welfare, including Father's inability to provide appropriate care, and the love, comfort, security, and stability that Child will receive in his foster home. *Id.* at 1219-20.

Based on the foregoing, we affirm the trial court's December 8, 2017 decree terminating Father's parental rights to Child involuntarily.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/11/2018

- 10 -